**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| JANE MEYER, <br><br> Plaintiff, <br><br> vs. <br><br> THE UNIVERSITY OF IOWA, BOARD OF REGENTS, STATE OF IOWA, GARY BARTA, individually and in his official capacity,  KEVIN WARD, individually and in his official capacity, CARROLL REASONER, individually and in her official capacity, SALLY MASON, individually and in her official capacity, BRUCE HARRELD, individually and in his official capacity. <br><br> Defendants. | Case No. <br><br><br> **COMPLAINT AND REQUEST FOR JURY TRIAL** |

COMES NOW the Plaintiff, Jane Meyer, by and through her attorneys, and in support of her Complaint states as follows:

**INTRODUCTION**

1.     This is an action under the First Amendment for the right to association pursuant to 42 U.S.C. § 1983 challenging the wrongful employment practices directed at Plaintiff Jane Meyer by the Defendants.

2.     This is also an action under Title IX of the United States Education Amendments of 1972, challenging the wrongful employment practices directed at Plaintiff Jane Meyer by the Defendants.

3.     Jane Meyer's first amendment right to associate with her partner was violated when the University of Iowa took steps to remove her from the athletic department and then fired her.

4. Jane Meyer's right to associate with her partner, Tracey Griesbaum, was violated when her partner brought forward concerns of discrimination and gender bias and as a direct result, Jane Meyer was removed from the athletic department and later fired.

5. Jane Meyer's right to bring forward concerns of gender equity, including voicing opposition to the termination of Tracey Griesbaum as a violation of Title IX was violated when Defendants removed her from the athletic department and then fired her.

## PARTIES

6. Plaintiff Jane Meyer is a resident of Iowa City, Iowa.

7. Defendant The University of Iowa's principal place of business is in Iowa City, Iowa.

8. Defendants the Board of Regents and the State of Iowa have their principal place of business in Polk County, Iowa.

9. Defendant Gary Barta is believed to be a resident of Johnson County, Iowa, and is the current Director of Athletics at the University of Iowa.

10. Kevin Ward is believed to be a resident of Johnson County, Iowa and is the Assistant Vice President for Human Resources Administration; he was also the Interim Vice President for Human Resources Administration at the time of Jane Meyer's termination.

11. Defendant Carroll Reasoner is believed to be a resident of Linn County, Iowa, and is the Vice President of Legal Affairs and General Counsel at the University of Iowa.

12. Defendant Sally Mason is believed to be a resident of Hilton Head Island, South Carolina, and is the former President of the University of Iowa.

13. Defendant Bruce Harreld is believed to be a resident of Johnson County, Iowa and is the current President of the University of Iowa.

14. The acts of which Plaintiff complains occurred in Iowa City, Johnson County, Iowa.

## JURISDICTION

15. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. Section 1332.

16. Venue is appropriate in this District under 28 U.S.C. Section 1391(a) and (c).

## FACTUAL BACKGROUND

17. Jane Meyer was hired as the Senior Associate Director in the Department of Athletics for the University of Iowa in March 2001.

18. Her job duties included overseeing and supervising intercollegiate athletics teams, working with student-athletes, fundraising, negotiating contracts, overseeing facilities and many other day to day operations.

19. Jane Meyer was an excellent employee with excellent reviews until late 2014.

20. Jane Meyer was the number two person in in command in the department from 2001 to 2014.

21. Gary Barta is the Athletic Director at the University of Iowa, a position he has held since August 1, 2006.

22. When Gary Barta was hired, Jane Meyer was already positioned as the number two person in the athletic department on the organization chart as well as within a memo from the former president of the University.

23. Unknown to Jane Meyer, Gary Barta did not perceive her as the number two person in the athletic department.

24. In late 2013 and early 2014, Gary Barta told Jane Meyer that he needed someone who could "better represent me."

25. In late 2013 and early 2014, Jane Meyer voiced her concerns and opposition to being replaced as the number two person in the department of athletics.

26. On August 4, 2014, Gary Barta hired a male, Gene Taylor, to fulfill the number two position.

27. Gene Taylor came from a university that employed very few female coaches of women's teams and that did not support females in high level administration positions.

28. On August 4, 2014, Jane Meyer voiced her concern and opposition in a private meeting held with senior staff members regarding the firing of a female coach.

29. The female coach that was fired was Tracey Griesbaum.

30. Tracey Griesbaum was one of the top field hockey coaches in the country.

31. Tracey Griesbaum was fired after an investigation cleared her of any wrongdoing.

32. Jane Meyer raised concerns about why Tracey Griesbaum was being let go and why the athletic department was willing to let go its most successful female coach.

33. Despite Jane Meyer voicing opposition to potential Title IX violations, Gene Taylor, who had only been employed for less than one day, strongly suggested to Gary Barta that Jane Meyer be fired.

34. From September through December 2014, Jane Meyer's partner, Tracey Griesbaum, raised concerns of gender discrimination as a result of her termination on August 4, 2014.

35. From September through December 2014, Jane Meyer's partner, Tracey Griesbaum, asked the University of Iowa to conduct investigations into her termination.

36. From September through December 2014, Jane Meyer's partner, Tracey Griesbaum, asked the University of Iowa to investigate gender bias and gender equity concerns throughout the athletic department.

37. To date, no one in the athletic department, Office of Equal Opportunity and Diversity, Human Resources or the legal department have investigated her complaints of gender bias and gender equity.

38. From August to December 2014, Jane Meyer, as Tracey Griesbaum's partner, was aware of Ms. Griesbaum's concerns about gender discrimination and her concerns about the impact of gender inequities on coaches and student athletes.

39. From August to December 2014, Jane Meyer had her own personal concerns about the potential discrimination and the risk to female coaches and student athletes.

40. Because of her concerns and the decision of administration to ignore these concerns by refusing to acknowledge or simply investigate them, Jane Meyer spoke up in meetings and was reserved and more business-like in the office.

41. From August to December 2014, Jane Meyer voiced several concerns regarding potential Title IX violations relating to Tracey Griesbaum's termination.

42. From August to December 2014, Jane Meyer also raised other concerns regarding potential Title IX violations to Gary Barta.

43. On December 4, 2014, Jane Meyer hand delivered a memo to Gary Barta discussing potential Title IX violations, as well as other violations of gender equity and retaliation laws. (EXHIBIT 1)

44. On December 5, 2014, merely one day after she submitted the memo, Jane Meyer was put on administrative leave.

45. During a meeting on either December 4 or December 5, 2014, Defendants Gary Barta, Kevin Ward, and Carroll Reasoner, on the advice of the attorney general, made the decision to remove Jane Meyer from the athletic department.

46. On December 5, 2014, Gary Barta sent out an email to the employees in the athletic department regarding the sole reason he was removing Jane Meyer from the athletic department.

47. The email stated that the reason that Meyer was being removed from the athletic department was because she was in a relationship with Tracey Griesbaum and because of that relationship, she needed to be removed from the department.

48. Specifically, the email states: "Ms. Griesbaum's attorney has publicly stated that she intends to sue the University for her termination and alleged disparity in the treatment of women's and men's athletics at Iowa. Ms. Griesbaum and Dr. Meyer have publicly disclosed that they have been in a longstanding relationship with each other. Leaving Dr. Meyer in her leadership position of Senior Associate Director of Athletics has presented many challenges for the Athletics Department and the University's defense of Ms. Griesbaum's imminent litigation. On the advice of the Assistant Attorney General who is handling this matter, the University will reassign Dr. Meyer to a position outside the Athletics Department until these matters are resolved." (EXHIBIT 2)

49. At the time they removed Jane Meyer from the athletic department, Defendants knew that she was in a longstanding relationship with Tracey Griesbaum.

50. At the time they removed Jane Meyer from the athletic department, Defendants knew that Tracey Griesbaum had raised concerns of the university violating gender equity laws.

51. At the time they removed Jane Meyer from the athletic department, Defendants knew that Jane Meyer supported Tracey Griesbaum in raising concerns of violations of gender equity and retaliation laws.

52. Defendants told Jane Meyer that the sole reason that she was being removed from the athletic department was because of her relationship with and the pending litigation threatened by Tracey Griesbaum.

53. Assistant Vice President for Human Resources Administration, Kevin Ward, told Jane Meyer in person that she was not being removed for any performance based reasons.

54. Gary Barta confirmed that she was not being removed for any performance based reasons in writing in a memo documenting the administrative leave.

55. Specifically, Gary Barta stated "Please note that this is not a disciplinary measure" in a memo provided to Jane Meyer documenting the December 5, 2014 administrative leave meeting. (EXHIBIT 3)

56. Almost two years later, on November 1st and 2nd of 2016, both Gary Barta and Kevin Ward confirmed under oath that the reason Jane Meyer was removed was because of her longstanding relationship with Tracey Griesbaum and Griesbaum's threat of litigation.

57. They also confirmed that they understood the threat of litigation to be about Tracey Griesbaum raising concerns of discrimination.

58. Gary Barta also confirmed under oath, which was just recently discovered through deposition testimony, that the decision to remove Jane Meyer from the department was not made until the day after she presented the memo emphasizing her gender equity, equal pay, and retaliation complaints.

59. Jane Meyer was not in Tracey Griesbaum's chain of command and had no supervisory authority over her.

60. Jane Meyer was not involved in any decisions to investigate Tracey Griesbaum's complaints of discrimination; if she had, an investigation would have been conducted.

61. Jane Meyer's job duties do not include being a pivotal person in investigations of complaints of discrimination in sports programs she did not oversee.

62. There were other reasonable alternatives than only removing Jane Meyer from the athletic department to ensure confidentiality, including taking meetings outside of the athletic department offices regarding Tracey Griesbaum and walling off Jane Meyer from discussions regarding Tracey Griesbaum.

63. The University of Iowa has mechanisms in place to ensure confidentiality in sensitive issues, including lawsuits, drug screenings, and other personnel decisions.

64. The University of Iowa also had a policy and duty under Title IX to conduct investigations into the concerns about gender bias or gender equity.

65. Investigating the concerns of Tracey Griesbaum or Jane Meyer regarding gender bias or gender equity would have been a reasonable alternative to removing Jane Meyer from the athletic department.

66. The University of Iowa could have taken any of those reasonable measures to ensure that Jane Meyer was not involved in litigation strategy about Tracey Griesbaum.

67. Former President Sally Mason knew of the relationship between Tracey Griesbaum and Jane Meyer, knew of the opposition to discrimination both women raised, and yet approved the removal of Jane Meyer from the department of athletics.

68. Placing Jane Meyer on administrative leave, transferring her twice, and then firing her was objectively unreasonable considering the other mechanisms in place to ensure confidentiality in a highly sophisticated operation like the University of Iowa that deals with HIPPA issues, drug screening issues, sexual assault issues, and FERPA.

69. It was also objectively unreasonable because the reasons Defendants believed they needed to transfer her was because she was opposing discriminatory practices on behalf of herself, Tracey Griesbaum, and other females in the athletic department.

70. It was also objectively unreasonable to refuse to investigate the concerns raised by Tracey Griesbaum and by Jane Meyer prior to removing Jane Meyer from the athletic department.

71. Jane Meyer was reassigned to work in the Planning, Design, and Construction unit of Facilities Management on December 10, 2014.

72. She was reassigned to another position as a Logistical Strategist and Project Manager for the College of Liberal Arts and Sciences in April 2015.

73. Jane Meyer relied on the promise that her removal was temporary and she would be returned to athletics.

74. At no time did anyone from the University, including Gary Barta and Kevin Ward tell Jane Meyer that she would not be returning to athletics.

75. On June 9, 2016, Jane Meyer was instructed that her employment with the University of Iowa was ending on September 9, 2016.

76. The University refused to transfer Jane Meyer to yet another open position and instead terminated her on September 9, 2016.

77. Gary Barta, Kevin Ward and Carroll Reasoner were all part of the decision making process to terminate Jane Meyer's employment.

78. President Bruce Harreld knew of Jane Meyer's transfer, repeated voiced opposition to discrimination, and yet approved her termination from the University of Iowa.

**COUNT I**
**VIOLATION OF THE FIRST AMENDMENT**
**RETALIATION UNDER 42 U.S.C. § 1983**

9

79.     Plaintiff repleads paragraphs 1 through 78 as if fully set forth herein.

80.     The University of Iowa, through the actions of Gary Barta, Kevin Ward, Carroll Reasoner, and Sally Mason, took steps to remove Jane Meyer from her position in athletics based upon her intimate association with Tracey Griesbaum.

81.     Jane Meyer was transferred to less desirable positions and then terminated from employment.

82.     The University of Iowa, through the actions of Gary Barta, Kevin Ward, Carroll Reasoner, and Bruce Harreld, took steps to terminate Jane Meyer's employment based upon her intimate association with Tracey Griesbaum.

83.     Jane Meyer would have remained in her position in athletics and not fired if she was not in an intimate relationship with Tracey Griesbaum.

84.     The Defendants' unlawful actions resulted in Jane Meyer suffering loss of wages and other benefits related to that employment, as well as emotional distress.

85.     As a proximate result of Defendants' actions, Plaintiff has in the past and will in the future suffer injuries and damages.

86.     The Defendants' actions also warrant the imposition of specific equitable relief including injunctive relief, including but not limited to the following: requirement of Defendant to conduct specific training of its employees to prevent discrimination, reinstatement or front pay, and such other and further relief as is necessary to effectuate the policies of state and federal law.

WHEREFORE the Plaintiff, Jane Meyer, prays that the Court find that the Defendants unlawfully retaliated against her on the basis of her First Amendment Rights to intimate association; that the Court order the Defendants to pay Jane Meyer all past and future wages and

benefits lost including interest; that the Court order Defendants to pay Jane Meyer appropriate damages for emotional distress in an amount to be proved at trial; that the Court order Defendants to pay all costs and attorney's fees incurred by Jane Meyer in pursuing this action; for interest; for equitable relief, and that the Court order and adjudge such other and further relief as it deems just and proper.

**COUNT II**
**VIOLATION OF TITLE IX**
**EDUCATION RETALIATION**

87. Plaintiff repleads paragraphs 1 through 86 as if fully set forth herein.

88. The University of Iowa's educational programs and activities are subject to the requirements and regulations of Title IX.

89. After Jane Meyer complained about gender inequities, Defendants retaliated against Jane Meyer when it placed her on administrative leave, transferred her, and terminated her in violation of Title IX.

90. The Defendants' unlawful actions resulted in Jane Meyer suffering loss of wages and other benefits related to that employment, as well as emotional distress.

91. As a proximate result of Defendants' actions, Plaintiff has in the past and will in the future suffer injuries and damages.

92. The Defendants' actions also require the imposition of specific equitable and injunctive relief necessary to enforce the mandates of Title IX including, but not limited to: a) Reinstatement of Plaintiff to her position in athletics, b) a court order requiring that the University of Iowa be audited regarding its compliance with Title IX and that any failures or violations of Title IX be immediately remedied by the University of Iowa, c) that the University of Iowa be required to take steps to not only comply with Title IX but to provide additional

remedies and funding to make up for shortcomings and the failure to make progress as required by Title IX, and d) such other and further relief as Title IX and the need to make Jane Meyer and other females similarly situated at the University of Iowa whole.

WHEREFORE the Plaintiff, Jane Meyer, prays that the Court find that the Defendants unlawfully retaliated against her on the basis of Title IX; that the Court order the Defendants to pay Jane Meyer all past and future wages and benefits lost including interest; that the Court order Defendants to pay Jane Meyer appropriate damages for emotional distress in an amount to be proved at trial; that the Court order Defendants to pay all costs and attorney's fees incurred by Jane Meyer in pursuing this action; for interest; for equitable relief, and that the Court order and adjudge such other and further relief as it deems just and proper.

## JURY DEMAND

Plaintiff, Jane Meyer, requests a trial by jury.

NEWKIRK ZWAGERMAN, P.L.C.

　　*/s/ Jill M. Zwagerman*　　
Jill M. Zwagerman  AT0000324
jzwagerman@newkirklaw.com
Thomas Newkirk  AT0005791
tnewkirk@newkirklaw.com
Lori Bullock
lbullock@newkirklaw.com
521 E. Locust Street, Suite 300
Des Moines, IA  50309
Telephone:  515-883-2000
Fax:  515-883-2004
ATTORNEYS FOR PLAINTIFF

Original Filed.